## HILL et al. v. FIDELITY & DEPOSIT CO. OF MARYLAND.

### No. 130.

District Court, N. D. Georgia, Rome Division. Nov. 8, 1930.

M. B. Eubanks, of Rome, Ga., for plaintiffs.

Underwood, Haas & Gambrell, of Atlanta, Ga., for defendant.

SIBLEY, District Judge.

Some of the stockholders of a failed state bank sue in their own names upon the bond of a former superintendent of banks to recover the value of their stock when the superintendent went into office, and the amount of the assessment made upon them, claiming that the failure was due to certain unlawful acts of the directors in managing the bank, known to but not checked by the superintendent. A demurrer challenges their right to sue.

The superintendent of banks is a state officer of large powers and duties, fixed by the banking laws of Georgia, quite similar to those of the Comptroller of the Currency in the national banking system. He is required to give bond conditioned that he will faithfully discharge the duties required of him, that he will account for all moneys received by virtue of his office, and will safely deliver to his successor all moneys and effects belonging to his office. Banking Act of 1919 (Laws Ga. 1919, p. 135), art. 2, § 6. The bond is liable to any person injured on account of the superintendent's failure to faithfully discharge the duties of his office, the suit to be in the name of the state, for the use of the injured party. Article 2, § 21. The bond here sued upon is conditioned as required by law. The suit should have been in the name of the state, but the defect seems to be amendable. Georgia Civ. Code 1910, § 5689. The great question is whether the superintendent owes any duty to the stockholders of the banks of the state to see that the directors manage the banks according to law, for a failure in which he and his bondsman are liable to them. We therefore lay to one side the question of liability to members of the public who deal with the bank, and the question of liability to the bank itself, and restrict the inquiry to a liability directly to the stockholder for loss in the value of his stock or by assessment upon him.

A banking business is instituted by the stockholders, who apply for a charter to do such a business. Article 8, § 1. It is their business. The management of the bank is committed to directors chosen annually by the stockholders. Article 19, § 1. The directors are the representatives of the stockholders. Their duty to make semiannual examinations of the bank and report thereon to the superintendent is minutely prescribed. Article 19, §§ 5 and 8. Other officers make stated reports to him also. Article 4, § 1. Loans of the sort complained of in this petition are prohibited either totally or unless authorized by a majority of the directors. Article 19, §§ 11, 12, 13, 16. The stockholders, of course, have a right of access to the books of their corporation, and to have such reports from their directors as they require. Of the liability of directors on account of their own misconduct, there is no question, but the right of recovery has been held in Georgia to be technically in the bank rather than in the stockholders. Hinton v. Mobley, 167 Ga. 60, 144 S. E. 738. The superintendent of banks is under duty to scrutinize the reports of the directors and other officers, and to make unannounced examinations of the bank through his own examiners. Article 3, § 1. In these ways the petitioners allege that the superintendent came to know that these directors were carrying bad debts as good, had made excessive loans, and other loans which were not according to law, and that he did nothing about it. What should he have done? He could not tell the stockholders about it. He is not only not required to make any report to them, but he is forbidden to disclose any information he may acquire touching the banks except to named persons, not including the stockholders. Article 3, § 9; article 20, § 2. All he can do is "to take action as provided in the law." The action prescribed in article 5, § 1, is, first, to give notice to the directors, and to direct discontinuance of wrong practices. By article 5, § 3, he can "require the removal of officers and employees" found to be dishonest, incompetent,

etc. These officers and employees are those elected and employed by the directors, as mentioned in article 19, § 10, and article 1, § 3. Apparently the directors themselves are not included. Indeed, the meaning seems to be that the directors are to do the removing at the request of the superintendent. The superintendent has no relations with the stockholders. By article 6, should he find the capital impaired so as to require an assessment on the stockholders, he holds no communication with them even then, but notifies the bank, whose directors and officers are to make and collect the assessment. By article 7, under named conditions, the superintendent may take real action by taking charge of the bank. A reading of the article indicates that this is done for the safety of the outside public rather than in behalf of the stockholders. By section 20, he may then directly assess the stockholders, may call stockholders' meetings (section 25) and the like. By section 26, the stockholders may arrange to have an agent of their own take the assets out of the hands of the superintendent on giving proper bond.

I can find nothing in the act indicating that the superintendent is in any sense a guardian for the stockholders. He stands rather in opposition to them and to their chosen representatives, and rather as, the guardian of the public interests, beginning with the granting of the charter down through the liquidation of the bank. He owes the stockholders no duty, and consequently they cannot, in a legal sense, be injured by any failure to do what he might or should do under the law. The stockholders must choose faithful directors, and see that they conduct the business intrusted to them properly, and look to them only in case of default. The directors, and not the superintendent of banks, are in charge of the business. The stockholders of a failed bank have no recourse against the superintendent of banks, or his bond, because of the mismanagement of their directors and officers.

The petition claims, however, that, after the superintendent took charge of this bank, recourse on the bond of the defaulting cashier was lost by the superintendent's failure to give timely notice to his surety. If the duty to give the notice was on the superintendent rather than on the bank officers, the remedy on the bond was plainly a general asset of the bank, and its loss gives no personal right of action to the stockholders.

It follows that no cause of action in the stockholders is set forth, and the general demurrer is sustained, and the petition dismissed.